Efrain VELASQUEZ, Individually; Guadalupe Velasquez, Individually and as the Mother and Natural Guardian at Law of Efrain Velasquez, who is believed to be Mentally Incapacitated, Plaintiffs–Appellees

v.

Sergeant B. AUDIRSCH, Badge Number 1605, Individually and in the Official Capacity as a Police Officer of the City of El Paso Police Department; Officer D. Collins, Badge Number 2524, Individually and in the Official Capacity as a Police Officer of the City of El Paso Police Department; Officer S. Adams, Badge Number 2501, Individually and in Official Capacity as a Police Officer of the City of El Paso Police Department, Defendants–Appellants.

No. 13–50029.

United States Court of Appeals, Fifth Circuit.

July 3, 2014.

William Abraham Elias, El Paso, TX, for Plaintiffs–Appellees.

Eric Michael Brittain, Esq., Attorney, Windle Hood Alley Norton Brittain & Jay, L.L.P., El Paso, TX, for Defendants–Appellants.

Before DENNIS and PRADO, Circuit Judges and BROWN,* District Judge.

PER CURIAM: **

Several police officers learned that a schizophrenic young man, Efrain Velasquez, had stop taking his prescribed medications and had threatened to kill his next-door neighbor with a large knife before retreating into his family home. Based on this information, the police officers entered the residence without a warrant. Plaintiffs–Appellees Efrain Velasquez and his mother, Guadalupe Velasquez, (collectively "the Velasquezes") sued the Defendants–Appellants (collectively "the Officers") under 42 U.S.C. § 1983 asserting the Officers' warrantless entry violated the Fourth Amendment. The Officers moved for summary judgment on their qualified-immunity defense. The Officers argued the exigent-circumstances exception to the warrant requirement justified their warrantless entry. The district court denied their motion, and the police officers filed this interlocutory appeal challenging the denial of their summary judgment motion based on qualified immunity. We reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Because our jurisdiction to review the district court's denial of qualified immunity on summary judgment is limited,[1] we accept Plaintiffs' version of the disputed facts as true. On the night of December 11, 2008, three police officers were called to the home of Hector Carachure ("Carachure") in response to a 9–1–1 call. Carachure—Efrain's next-door neighbor—had called 9–1–1 to report that Efrain had threatened him with a knife. When the Officers arrived at Carachure's house, Carachure told them that Efrain had fled into his house next door, and Carachure told the Officers which house it was. The Officers went to the Velasquezes' home and knocked on the door.

At the front door, the Officers learned information which, they contend, supports their qualified immunity defense based on the exigent-circumstances exception to the warrant requirement. Efrain's mother answered the door with two of her sons that did not match Efrain's description. The Officers told Efrain's mother that they were looking for Efrain because he had threatened Carachure, and they asked her where Efrain was. Efrain's mother did not consent to search of her home, according to the complaint, but she told the Officers that she would go back into the house herself to look for her son; and she did. When she returned, she told the Officers that Efrain was suffering from schizophrenia, "had a mental problem[,] and had not taken his medication." She also told the Officers that she could not find him.[2]

Carachure's mother then approached one of the Officers and said, something

* District Judge for the Eastern District of Louisiana, sitting by designation.

** Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1. *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir.2004) (en banc); *see infra* at Part III.

2. Guadalupe Velasquez provides two different accounts of the Officers' entry. On the night of the incident, Guadalupe provided a statement to the police in which she stated that when the Officers arrived at her door, she told them that Efrain was not home, and that when the Officers told her that hiding her son could constitute grounds for her arrest, she allowed them to enter. Her second account, from an affidavit taken almost three years later, states that when the Officers arrived at the door, she told them that Efrain was at home and that she would look for him. In this second account, she stated that she subsequently told the Officers she could not find him.

had to be done about Efrain because he was very dangerous and was going to hurt someone. Carachure's mother also told the officer that, on one specific occasion, she had observed Efrain pick up a baseball bat and threaten a group of small children that Carachure's mother was babysitting. Efrain's mother approached the officer and Carachure's mother during this exchange. Carachure's mother told Efrain's mother that Efrain had come after Carachure with a knife. Efrain's mother interrupted and said that Efrain "is sick." The officer overheard this exchange.

Ultimately, the Officers entered the Velasquezes' home without a warrant, and the Velasquezes' later sued the Officers in federal court for damages under § 1983 asserting their warrantless entry violated the Velasquezes' Fourth Amendment rights.

The district court denied summary judgment based on the following facts, which it concluded, created a genuine dispute of material fact. When the officers spoke with Guadalupe Velasquez and her two sons at the door, none of them showed signs of distress or of concern for their imminent safety. Efrain Velasquez had not threatened an occupant of the house or the Officers, was not suicidal, and the original victim of the alleged assault was not in the home ultimately searched. Further, the Officers allowed family members to enter and leave the house as they pleased demonstrating a lack of concern about their safety when inside the home.

## II. JURISDICTION AND STANDARD OF REVIEW

■ We have jurisdiction to review a district court's collateral order denying summary judgment if "the defendant was a public official asserting a defense of 'qualified immunity.'" *Johnson v. Jones,* 515 U.S. 304, 311, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). Our jurisdiction to review this collateral order is limited: a district court must make two distinct determinations before denying qualified immunity on summary judgment, and we can review only one of these determinations. *Hogan v. Cunningham,* 722 F.3d 725, 730 (5th Cir.2013) (citation omitted). First, the district court must find that the defendant's conduct, if proven, would be, as a matter of law, objectively unreasonable in light of clearly established law. *Id.* (citation omitted). Second, the district court must find that there exists a genuine dispute of material fact whether the officer did, in fact, carry out that course of conduct. *Id.* (citation omitted). We have jurisdiction to review only the first determination, the "purely legal question whether a given course of conduct would be objectively unreasonable in light of clearly established law." *Id.* at 731 (citation omitted). In other words, "[w]here, as here, the district court finds that genuinely disputed, material fact issues preclude a qualified immunity determination, this court can review only their materiality, not their genuineness." *Manis v. Lawson,* 585 F.3d 839, 842 (5th Cir.2009) (citation omitted).

Because we lack jurisdiction to review a district court's decision that a genuine factual dispute exists, we do not apply the ordinary summary judgment standard. *Hogan,* 722 F.3d at 731. Instead, we consider only undisputed facts; if a fact is disputed, we must "accept the plaintiffs' version of the facts as true." *Id.* (quoting

---

The district court viewed this evidence on summary judgment in the light most favorable to the nonmovants and relied on the second statement. Because we lack jurisdiction to second-guess this determination, *see Kinney,* 367 F.3d at 346, we accept Guadalupe Velasquez's version.

*Kinney,* 367 F.3d at 348). A fact is material only if it is legally significant, in that its resolution could affect the disposition of the claim. *Minter v. Great Am. Ins. Co.,* 423 F.3d 460, 465 (5th Cir.2005). "An officer challenges materiality when he contends that taking *all* of the plaintiffs' factual allegations as true no violation of a clearly established right was shown." *Reyes v. City of Richmond, Tex.,* 287 F.3d 346, 351 (5th Cir.2002) (citation and internal quotation marks omitted). "In reviewing the district court's conclusions concerning the legal consequences—the materiality—of the facts, our review is of course *de novo.*" *Hogan,* 722 F.3d at 731 (footnotes and internal quotation marks omitted).

## III. DISCUSSION

The Officers appeal the district court's denial of their motion for summary judgment based on qualified immunity. Specifically, the Officers claim that the exigent-circumstances exception excused them from the warrant requirement. The Officers dispute the materiality of the factual disputes relied upon by the district court, and contend that accepting the Velasquezes' version of these disputed facts as true, no violation of a clearly established right occurred. *See Reyes,* 287 F.3d at 351.

Qualified immunity protects governmental officials from liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Rockwell v. Brown,* 664 F.3d 985, 990 (5th Cir.2011) (internal quotation marks omitted) (quoting *Pearson v. Callahan,* 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)). "When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." *Club Re-*

*tro, L.L.C. v. Hilton,* 568 F.3d 181, 194 (5th Cir.2009) (citation omitted).

To determine if a defendant is entitled to qualified immunity, courts conduct a two-prong inquiry: (1) could the disputed facts, if true, constitute a violation of a constitutional right, and (2) was the right clearly established at the time of the violation. *Id.* Qualified immunity is a question of law, but where there are genuine disputes of *material* fact relevant to immunity, the jury decides the question. *Mesa v. Prejean,* 543 F.3d 264, 269 (5th Cir.2008) (citation omitted). A defendant's acts are objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the plaintiff's rights. *Thompson v. Upshur Cnty. Tex.,* 245 F.3d 447, 457 (5th Cir.2001). With these principles in mind, we turn now to the underlying constitutional claim.

The Velasquezes claim the Officers' search and seizure violated the Fourth Amendment. The Fourth Amendment prohibits "unreasonable searches and seizures," and a warrantless search of a person's home is presumptively unreasonable. *United States v. Aguirre,* 664 F.3d 606, 610 (5th Cir.2011). Because "the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions." *Brigham City, Utah v. Stuart,* 547 U.S. 398, 400, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006).

The Officers assert their search is justified by the exigent-circumstances exception to the warrant requirement. Under the exigent-circumstances exception, law-enforcement officers may enter a residence without a warrant if they have an "objectively reasonable basis for believing that an occupant is ... imminently threatened" with serious injury. *Id.* at 403, 126 S.Ct. 1943. This exception balances the privacy interests protected by Fourth Amendment

with "[t]he need to protect or preserve life or avoid serious injury." *Id.* (internal quotation marks omitted) (quoting *Mincey v. Arizona,* 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978)).

█ The issue on appeal is whether the Officers were entitled to qualified immunity based on their belief that an occupant was imminently threatened with serious injury, i.e., exigent circumstances. In this context, "qualified immunity turns ... on whether it was then 'clearly established that the circumstances with which' the officer 'was confronted did not constitute probable cause and exigent circumstances.'" *Pierce v. Smith,* 117 F.3d 866, 871 (5th Cir.1997); *see also Pearson,* 555 U.S. at 227, 129 S.Ct. 808 (declaring that courts can evaluate the two prongs of qualified immunity in either order).

We conclude that the law at the time of the Officers' entry into the Velasquezes' home did not clearly establish that the Officers were unreasonable in believing the threat Efrain posed to himself or others constituted exigent circumstances. As noted above, Efrain was a diagnosed schizophrenic who had been off his medication for some time, and had recently threatened his next-door neighbor with a large knife. The knife, a deadly weapon, remained in Efrain's possession inside the home—as far as the Officers knew. *Cf. United States v. Shannon,* 21 F.3d 77, 81–82 (5th Cir.1994) (upholding warrantless search under exigent circumstances because "it would be reasonable for the officers to believe that there was a possibility of danger to ... motel guests if an unknown suspect who might still be inside the room were to gain access to the gun" that the officers had reason to believe was still inside the room). Guadalupe Velasquez told the Officers that Efrain was in the home. Thus, the Officers could have reasonably believed Efrain was inside, with a deadly weapon, and that there therefore remained a danger to the occupants of the home. *See also Estate of Bennett v. Wainwright,* 548 F.3d 155, 169 (1st Cir.2008) (upholding warrantless search of a residence because the officers were informed "by the 911 dispatcher that Bennett had a mental illness, was off his medications, had savagely beat a stray dog, and had verbally threatened his mother. [The officers] were also told that Bennett was inside a residence that contained firearms.... [Therefore,] a reasonable officer confronted with similar circumstances could have believed there was sufficient threat of dangerous behavior to justify entering the house and taking Bennett into protective custody.").

The district court stated that five disputed facts precluded it from finding that the Officers' actions were reasonable. First, when the Officers spoke with Guadalupe Velasquez and her sons at the entrance of the home, they did not show signs of distress. Second, Efrain had not threatened an occupant of the home or the Officers. Third, Efrain was not suicidal. Fourth, the original victim, Carachure, was not in the home. Fifth, that the Officers allowed the family members to enter and exit the home demonstrated a lack of concern about the family members' safety. Accordingly, the district court concluded that any exigent circumstances had dissipated by the time the Officers entered the home, and that they could have waited to obtain a warrant.

The district court's analysis was arguably correct in evaluating the merits of the Velasquezes' underlying constitutional claim[3]; however, this analysis miscon-

---

**3.** We express no opinion on the first step, whether the plaintiff has shown a violation of a constitutional right. *See Pearson,* 555 U.S. at 242, 129 S.Ct. 808 ("[T]he judges of the

strues qualified immunity doctrine. As discussed above, the ultimate question is not whether the Officers' actions were reasonable under the Fourth Amendment; the question is whether *the law* at the time of the Officers' entry into the Velasquezes' home *clearly established* that their actions were unreasonable. The Supreme Court's decision in *Ryburn v. Huff*, —— U.S. ——, 132 S.Ct. 987, 181 L.Ed.2d 966 (2012) (per curiam) leads us to the inescapable conclusion that the law was not clearly established in the circumstances here.[4]

The facts, procedural posture, and holding in the Supreme Court's decision in *Ryburn* confirms our decision here. In *Ryburn*, four police officers responded to a call in June 2007 from the local high school that a student was "rumored to have written a letter threatening to 'shoot up' the school." *Id.* at 988. The officers went to the student's home to interview him, and they knocked several times on the front door of his family's home. *Id.* When no one answered, one officer called the home telephone. *Id.* The officer then called the student's mother's cell phone, which she answered. *Id.* The officer asked the mother where her son was, and she said he was in the home with her. *Id.* When the officer told the mother that they wanted to speak with her outside, she hung up. *Id.* Soon thereafter, the mother and son came out to the front steps. *Id.* The officers found it odd that the mother did not ask the officer why they were at her home or questioning her about her son. *Id.* The mother refused to let the officers inside the home to interview the student. *Id.* at 989. When an officer asked the mother if there were any guns in the home, she turned and went inside the house. *Id.* The officers, suspicious of her behavior, followed her into the house. *Id.* The officers spoke to the son for five or ten minutes, determined that the rumors of violence were unfounded, and left. *Id.*

The family sued the police officers under 42 U.S.C. § 1983 for violating the Fourth Amendment, and the district court concluded that the officers were entitled to qualified immunity and granted judgment in their favor. A divided panel of the Ninth Circuit reversed. With analysis similar to the district court's in this case, the Ninth Circuit in *Ryburn* concluded that although police officers are permitted to enter a home if they reasonably believe it is necessary to protect themselves or others from harm, the officers acted objectively unreasonably because no reasonable officer could have believed that the officers or the family members were in serious imminent risk of harm. *Id.* at 989–90.

The Supreme Court, in a per curiam opinion, reversed: "No decision of this Court has found a Fourth Amendment violation on facts even roughly comparable to those present in this case." *Id.* The Supreme Court surveyed the case law and noted that it had previously held that officers can enter a home without a warrant when they have "an objectively reasonable basis for believing that an occupant is ... imminently threatened with [serious injury.]." *Id.* (alterations in original) (quoting *Stuart*, 547 U.S. at 400, 126 S.Ct. 1943). The "need to protect or preserve life or avoid serious injury is justification for

district courts and the courts of appeals are in the best position to determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case.").

**4.** The Officers' conduct at issue in this appeal occurred in December 2008, whereas, the officers' conduct at issue in *Ryburn* occurred in

June 2007. Thus, *Ryburn* held the law was not then clearly established in those circumstances in 2007, and we find *Ryburn* particularly determinative here because the issue is whether the law was clearly established in similar circumstances soon after.

what would be otherwise illegal absent an exigency or emergency." *Id.* (citation omitted). Further, it would "be silly to suggest that the police would commit a tort by entering [a residence] . . . to determine whether violence . . . is about to (or soon will) occur." *Id.* (alterations in original) (citation omitted).

Thus, the Court held, "[a] reasonable police officer could read these decisions to mean that the Fourth Amendment permits an officer to enter a residence if the officer has a reasonable basis for concluding that there is an imminent threat of violence." *Id.* "Confronted with the facts found by the District Court, reasonable officers in the position of petitioners could have come to the conclusion that there was an immediate threat to their safety and to the safety of others." *Id.* at 991.

The Supreme Court also included several comments which serve as guiding principles to our conclusion today. First, the Court noted that even lawful conduct can be cause for concern: "there are many circumstances in which lawful conduct may portend imminent violence." *Id.* The Supreme Court also faulted the Ninth Circuit for looking at each separate event in isolation and concluding that each, by itself, did not give cause for concern: "[I]t is a matter of common sense that a combination of events each of which is mundane when viewed in isolation may paint an alarming picture [when considered together]." *Id.* Finally, the Court instructed that we must be cautious about second-guessing a police officer's assessment, "made on the scene, of the danger presented by a particular situation." *Id.* at 991–92. This caution is borne from the truism that "reasonableness must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight and that the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Id.* (citation and internal quotation marks omitted).

Applying the Court's guidance from *Ryburn* to the facts here, the law at the time of the Officers' entry into the Velasquezes' home did not clearly establish that the officers were unreasonable in believing the threat Efrain posed to himself or others constituted exigent circumstances. To begin, the fact that the original victim, Carachure, was not in the home is immaterial to the inquiry of whether the Officers could have reasonably believed that Efrain or his family could be in danger. *See Ryburn*, 132 S.Ct. at 988–89 (where the officers arrived at home out of concern for the son's classmates, but entered the home out of concern for their own safety and the safety of the family). Additionally, the district court stated that one reason it was not reasonable for the Officers to enter was because Efrain was not suicidal. Assuming Efrain was not, in fact, suicidal, the Officers could have still reasonably believed that he was suicidal, or least that he posed a danger to himself, based on the facts as presented to the Officers at that point—namely, that Efrain had threatened Carachure only moments before with a large knife before retreating into his home with the knife, that Efrain's mother urged the Officers that Efrain was "deranged" and off his medication. And even if there were no signs of distress and the Officers allowed the family members to enter and exit the home, we must be cautious when second-guessing a police officer's assessment, "made on the scene, of the danger presented by a particular situation," particularly in the qualified immunity context. *See Ryburn*, 132 S.Ct. at 991–92.

The Velasquezes do not direct this Court to precedent clearly establishing the Offi-

cers' conduct here was unlawful, and we are aware of none. The Velasquezes do not respond to *Ryburn* or even cite it. Thus, accepting the Velasquezes' version of all disputed facts, "reasonable police officers in [the Officers'] position could have come to the conclusion that the Fourth Amendment permitted them to enter the [house based on the] objectively reasonable basis for fearing that violence was imminent." *See id.* at 992. Therefore, the Officers are entitled to qualified immunity.

## IV. CONCLUSION

For the reasons above, we REVERSE and REMAND this case to the district court.