# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

October 27, 2014

Lyle W. Cayce
Clerk

No. 13-30639

NATHAN RICE; BRANDON RICE; JONATHON RICE; JESSICA RICE; BRENDA RICE, on behalf of her Minor Daughter, M.R., Individually and on behalf of their deceased father Gerald Rice,

Plaintiffs–Appellants

v.

RELIASTAR LIFE INSURANCE COMPANY; JOEL ARNOLD, Individually and in his Official Capacity as a Livingston Parish Sheriff's Deputy; WILLIE GRAVES, Individually and in his Official Capacity as Livingston Parish Sheriff,

Defendants–Appellees

Appeal from the United States District Court
for the Middle District of Louisiana

Before DENNIS and PRADO, Circuit Judges, and BROWN,* District Judge.

EDWARD C. PRADO, Circuit Judge:

Plaintiffs–Appellees Nathan Rice, Brandon Rice, Jonathan Rice, Jessica Rice, and Brenda Rice[1] (collectively the "Rice Plaintiffs") brought suit against Deputy Joel Arnold ("Arnold") and Sheriff Willie Graves ("Graves") alleging various violations of federal and state law after Arnold fatally shot their father,

---

* District Judge for the Eastern District of Louisiana, sitting by designation.

[1] Brenda Rice brought suit on behalf of her minor daughter, M.R., individually, and on behalf of the Rice Plaintiffs' father, Gerald Rice.

No. 13-30639

Gerald Rice ("Rice"), while responding to a 911 call. The Rice Plaintiffs also filed suit against ReliaStar Life Insurance Company ("ReliaStar") to recover $179,000 they allege ReliaStar owes them under Rice's accidental death policy. Arnold and Graves filed motions for summary judgment, which the district court granted, dismissing all of the claims against them. The Rice Plaintiffs and ReliaStar filed cross-motions for summary judgment as to the death benefits issue, and the district court granted ReliaStar's motion and denied the Rice Plaintiffs' motion. On appeal, the Rice Plaintiffs challenge the district court's grant of summary judgment to Arnold, Graves, and ReliaStar. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

#### 1. Rice's Death

On January 27, 2010, Ryan Craig ("Craig"), Rice's nephew, placed a 911 call stating that Rice was sitting in Rice's truck with a loaded gun to his head and threatening to commit suicide. Arnold and Deputy Johnson ("Johnson") went to Rice's house in response to the 911 call. Craig told Arnold and Johnson that Rice was armed, had been drinking, had taken a lot of medication, and that Rice had a problem with law enforcement.

Arnold and Johnson entered Rice's home without a warrant, and Arnold saw Rice sitting in his truck in his garage with a gun to his head. Arnold and Johnson retreated to the kitchen for cover (a small hallway connected the kitchen to the garage). While Arnold and Johnson remained in the kitchen, Arnold repeatedly asked Rice to put his gun down. Rice refused, saying he wanted to come into the kitchen to get a beer. While Arnold and Johnson were in Rice's kitchen, they heard a single gunshot. Arnold and Johnson went to the garage and determined that Rice had not injured himself; it was later discovered that Rice had shot a single bullet into the wall in the garage. The

2

deputies again asked Rice to relinquish his gun as they retreated to the kitchen, but Rice refused.

Rice exited his truck and began walking toward the kitchen.[2]  Arnold repeatedly told Rice to put the gun down.  While continuing to walk toward the kitchen, Rice stated, "I want to commit suicide."  Arnold then fired four shots at Rice, hitting Rice in the chest three times.  Johnson, who was also present in the kitchen at the time, did not fire at Rice.  Rice later died from the gunshot wounds.

### 2.  Rice's Accidental Death Benefits

Rice was insured through a group life insurance policy issued by ReliaStar through his employer.  The policy provided for basic and supplemental life insurance, and the Rice Plaintiffs, Rice's beneficiaries under the policy, were entitled to receive accidental life benefits if Rice died as the result of a covered accident.  Rice's policy defined accident as "an unexpected, external, violent and sudden event."  After Rice's death, the Rice Plaintiffs filed a claim for the $179,000 accidental death benefit.

ReliaStar denied the claim, explaining that Rice's death did not qualify as an accidental death; he put himself in a position in which he should have known that serious injury or death could occur as a result of his actions.  The Rice Plaintiffs appealed the denial, and ReliaStar forwarded the appeal to its ERISA Appeals Committee, composed of three people who were not part of the original benefit determination.  The ERISA Appeals Committee affirmed the

---

[2] The parties dispute whether Rice still had his gun at the time he exited the vehicle. The deputies claim that Rice still had the gun in his hand while walking toward the kitchen, while the Rice Plaintiffs claim there is a genuine dispute regarding whether Rice still had the gun in his hand while walking toward the kitchen.  As we discuss in greater detail below, *see infra* Part IV(A)(1)(ii), the record demonstrates that any dispute about this fact is not genuine. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

No. 13-30639

denial of the claims. After the Rice Plaintiffs complained about the ERISA appeals process, ReliaStar agreed to provide a second appeal. As part of this second appeal, the committee interviewed Brandon Rice ("Brandon"), Rice's son who was outside the home on the day of his father's death. Brandon stated he heard his father ask the deputies to leave. But he also acknowledged that he was not in the house, did not know what happened, and had not spoken to his father before or during the incident.

## B. Procedural Background

### 1. The Rice Plaintiffs' Claims Against Arnold and Graves

The Rice Plaintiffs sued Arnold in federal court, asserting claims under 42 U.S.C. § 1983. Specifically, the Rice Plaintiffs alleged

> excessive and unreasonable use of deadly force, battery, assault, false imprisonment, intentional infliction of emotional distress, fright, and outrage, cruel treatment, failing to provide adequate or timely medical attention, violations of the Constitution and other laws of the United States and of the State of Louisiana, deliberate indifference to rights, safety, and dignity of Gerald Rice, [and] warrantless entry into the home of Gerald Rice.[3]

They also asserted claims against Arnold's supervisor, Graves, under the doctrine of respondeat superior, arguing that he was vicariously responsible for Arnold's actions.

Arnold and Graves immediately moved to strike paragraphs 27–29 of the Rice Plaintiffs' complaint. In paragraph 27, the Rice Plaintiffs alleged that

---

[3] First, the Rice Plaintiffs do not press, and therefore abandon, their claim for failure to provide adequate or timely medical attention on appeal.

Next, the district court construed the Rice Plaintiffs' claims for "cruel treatment," "violation of the Constitution and other laws of the United States," and deliberate indifference to the rights, safety, and dignity of Gerald Rice" as derivative of their claim for the use of excessive force. The Rice Plaintiffs do not challenge this on appeal. In fact, on appeal, they characterize their claims as ones for 1) warrantless entry, 2) excessive force, 3) assault and battery, 4) false imprisonment, and 5) intentional infliction of emotional distress, further suggesting that the district court correctly construed their claims.

Arnold had a MySpace page featuring a picture of a movie character played by Clint Eastwood with the caption "How I feel most of the time." In paragraph 28, the Rice Plaintiffs alleged that Arnold had battered, brutalized, falsely arrested, and maliciously prosecuted a seventy-year-old man. Finally in paragraph 29, the Rice Plaintiffs alleged that Rice was "shot and killed . . . by the deputy with a documented history of unprovoked violence and with the emotional state - 'most of the time!!!!' - of a trigger-happy anti-hero of the 1960s cinema."

Adopting the magistrate judge's recommendation, the district court struck paragraphs 27 and 29, but denied the motion as to paragraph 28. The court found that paragraph 28 "could certainly be relevant to [the Rice Plaintiffs'] contentions that Sheriff Graves was negligent in hiring, retaining, training, and/or supervising Deputy Arnold." The court, however, struck paragraphs 27 and 29 "because they are merely argumentative and prejudicial . . . and do not add to the substantive allegations of the complaint." There was no evidence linking the printed picture from MySpace to Arnold; Arnold's name did not appear anywhere on the printout, nor was there any indication that the image was tied to a MySpace account belonging to Arnold. The court characterized paragraph 29 as "essentially the equivalent of 'name-calling.'"

Arnold and Graves then argued that they were entitled to qualified immunity, and each filed a motion for summary judgment on the federal and state law claims. The district court found that they were protected by qualified immunity and granted both motions for summary judgment.

2.  The Rice Plaintiffs' Claims Against ReliaStar

The Rice Plaintiffs sued ReliaStar in Louisiana state court before ReliaStar completed its second ERISA appeal. After removing the case to federal court, ReliaStar completed its second ERISA appeal and again denied the Rice Plaintiffs' claim for Rice's accidental death benefits.

No. 13-30639

ReliaStar and the Rice Plaintiffs then filed cross-motions for summary judgment, and the district court granted ReliaStar's motion. The district court found ReliaStar's denial of the accidental death benefits was not arbitrary and capricious (and therefore not an abuse of discretion) because: (1) the decision was supported by substantial evidence; (2) there was a rational connection between the known facts and ReliaStar's decision; and (3) applying the facts to the Fifth Circuit's accidental death test supported granting ReliaStar's motion.

The Rice Plaintiffs timely appealed the district court's grant of summary judgment for Arnold, Graves, and Reliastar.

## II.  JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331 for the alleged constitutional violations and the ERISA claim, and supplemental jurisdiction under 28 U.S.C. § 1367 for the state law claims. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## III.  STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court views all facts in the light most favorable to the nonmovant and draws all reasonable inferences in the nonmovant's favor. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). If the movant shows the absence of any material fact, the nonmovant "must . . . designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). The nonmovant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (citation and internal quotation marks omitted). The nonmovant cannot create a genuine issue of material fact with "some metaphysical doubt as to the

material facts," "conclusory allegations," or "by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (citations and internal quotation marks omitted).  But, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255.

ERISA preempts all state law claims that relate to an employee benefit plan, so it governs the Rice Plaintiffs' claim for accidental death benefits.  *See* 29 U.S.C. § 1444(a).  Whether a death is accidental is a question of fact.  *Todd v. AIF Life Ins.*, 47 F.3d 1448, 1456 (5th Cir. 1995).  We review the factual determination that a worker's death was not accidental for abuse of discretion.  *Pierre v. Ct. Gen. Life Ins. Co.*, 932 F.2d 1552, 1562 (5th Cir. 1991).

## IV.  DISCUSSION

The Rice Plaintiffs argue that the district court erred in several ways.  First, they claim that the district court erred when it found that Arnold was entitled to qualified immunity for the federal claims and granted summary judgment for Arnold on the state law claims.  Next, the Rice Plaintiffs argue that the district court erred in finding Graves was not liable under federal or state law.  Finally, the Rice Plaintiffs argue that ReliaStar improperly denied their claim.  We address each issue in turn.

### A.  The Rice Plaintiffs' Claims Against Arnold

#### 1.  Federal Claims Against Arnold

The Rice Plaintiffs claim that Arnold violated Rice's constitutional rights when he entered Rice's home without a warrant and used excessive force against Rice.  In response, Arnold asserted that he was entitled to qualified immunity.  When a defendant invokes qualified immunity, the plaintiff then "bears the burden of negating the defense and cannot rest on conclusory allegations and assertions, but must demonstrate genuine issues of material

fact regarding the reasonableness of the officer's conduct." *Michalik v. Hermann*, 422 F3d 252, 262 (5th Cir. 2005).

Qualified immunity is a two-prong analysis. First, the court determines whether the plaintiff has alleged a violation of a constitutional right, and second, the court asks "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citation omitted). The court may determine which prong of the analysis it will address first. *Id.* at 236. The Supreme Court has explained that the clearly established standard incorporates an objective reasonableness inquiry:

> To be "clearly established" for purposes of qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Thus, as this [C]ourt has recognized, in light of the *Anderson* definition of "clearly established," the question "whether the . . . right was clearly established at the time the defendant acted . . . requires an assessment of whether the official's conduct would have been objectively reasonable at the time of the incident." *Conroe Creosoting Co. v. Montgomery County*, 249 F.3d 337, 340 (5th Cir. 2001).

*Kinney v. Weaver*, 367 F.3d 337, 349–50 (5th Cir. 2004) (en banc) (second and third alterations in original). The Supreme Court has cautioned that reasonableness is judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 US 386, 396 (1989). Courts must allow for the "fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397.

      *a. Warrantless Entry*

No. 13-30639

"[S]earches and seizures inside a home without a warrant are presumptively unreasonable." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (citation and internal quotation marks omitted). There are, however, circumstances in which a warrantless entry into a home is not a constitutional violation. Under the exigent circumstances exception to the warrant requirement, the Supreme Court has recognized that police officers are not required to obtain a warrant where "the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Id.* (quoting *Mincey v. Arizona*, 437 U.S. 385, 393–94 (1978)) (internal quotation marks omitted). "Accordingly, law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Id.*

The Rice Plaintiffs argue that the exigent circumstances exception to the warrant requirement does not apply in this case. They point out that Arnold entered Rice's home *before* Rice ever fired his gun, and so, at the time Arnold entered, no exigencies excused his warrantless entry. The Rice Plaintiffs also argue that Arnold violated departmental regulations in entering Rice's home and that Arnold and the other deputies should have established a perimeter and waited for a special response team before engaging with Rice.

This is not the first time we have encountered a tragic factual scenario like the one present here: a police officer, in an attempt to aid a potentially suicidal individual, entered without a warrant and killed the person the officer was trying to help. *See Rockwell v. Brown*, 664 F.3d 985 (5th Cir. 2011); *cf. Velasquez v. Audirsch*, No. 13-50029, 2014 WL 2978535 (5th Cir. July 3, 2014) (unpublished) (per curiam). In these cases, we have resolved the case on the second prong of the qualified immunity analysis, holding that the officer was entitled to qualified immunity because, at the time of the incident, the law was

9

not clearly established that it was unreasonable for an officer to enter without a warrant to address the threat an individual posed to himself. *See Velazquez*, 2014 WL 2978535, at *6–7 ("[T]he law at the time of the Officers' entry into the Velasquezes' home did not clearly establish that the officers were unreasonable in believing the threat [Velasquez] posed to himself or others constituted exigent circumstances."); *Rockwell*, 664 F.3d at 996 ("[A]t the time of the incident in this case, it was not clearly established that it was unreasonable for the officers to believe that the threat [Rockwell] posed to himself constituted an exigent circumstance."). Having only held that the law was not clearly established, our Court has not yet resolved the constitutional question these cases present: whether the exigent circumstances exception to the warrant requirement may allow for a warrantless entry based on the threat an individual poses to himself.

Today we reach that issue and hold that the threat an individual poses to himself may create an exigency that makes the needs of law enforcement so compelling that a warrantless entry is objectively reasonable under the Fourth Amendment. The Supreme Court's discussion of the exigent circumstances exception to the warrant requirement supports our holding. As the Court has explained, "[o]ne exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury. 'The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.'" *Stuart*, 547 U.S. at 403 (quoting *Mincey*, 437 U.S. at 392). This need to protect or preserve life is not limited to instances where violence is directed to another person; the need to protect and preserve life can be just as strong when the violence is directed as one's self. *See Fitzgerald v. Santoro*, 707 F.3d 725, 731 (7th Cir. 2013).

No. 13-30639

Our decision is consistent with the decisions of our sister circuits. *See e.g.*, *Fitzgerald*, 707 F.3d at 732 (holding that the police officers' warrantless entry was constitutional because they had "an objectively reasonable belief that they needed to enter without a warrant in order to prevent serious injury" where they had "been told that the woman inside [the home] had called a police station, that she sounded intoxicated, and that she had threatened suicide"); *Roberts v. Spielman*, 643 F.3d 899, 906 (11th Cir. 2011) (per curiam) (holding that the police officer's warrantless entry did not violate the Fourth Amendment and that he was entitled to qualified immunity where the officer responded to a reliable report that Roberts was suicidal, opened the doorway and stood in the entryway of Roberts's home, stayed long enough to assess the potential harm, and left the property after determining that the threat had passed); *Ziegler v. Aukerman*, 512 F.3d 777, 786 (6th Cir. 2008) (concluding that exigent circumstances justified a warrantless entry where a police officer was acting to help a suicidal woman because "[t]o require that an officer who has received information from a credible source, or sources, that an individual is a suicidal risk, wait to obtain a warrant before saving that victim, would likely result in countless preventable deaths").

Of course, it bears repeating that courts must still determine whether the actions of the law enforcement officer who entered without a warrant were objectively reasonable. *See Michigan v. Fisher*, 558 U.S. 45, 47 (2009) ("The ultimate touchstone of the Fourth Amendment . . . is reasonableness." (citation and internal quotation marks omitted)); *Stuart*, 547 U.S. at 403–05 (explaining that a warrantless entry based on exigent circumstances must be objectively reasonable). While avoiding the risk of second-guessing officers' actions based on 20/20 hindsight, we must still ensure that, at the time the officer acted, there was reliable information of an "urgent, ongoing emergency." *See United States v. Timmann*, 741 F.3d 1170, 1180–81 (11th Cir. 2013) (holding that

officers' warrantless entry was not justified when the case had no "indicia of an urgent, ongoing emergency" and the officer did not "have any information that would lead them to suspect that Timmann might be suicidal").

Turning to the facts of this case, we hold that Arnold did not violate Rice's Fourth Amendment rights when he entered Rice's home without a warrant because he had an objectively reasonable belief that Rice would imminently seriously injure himself. After Craig's 911 call, Arnold knew the following: Rice was suicidal; Rice had a gun; and Rice had been drinking and was sitting in his truck holding a gun to his head. Based on these facts, it was objectively reasonable for Arnold to believe he needed to protect Rice from imminent injury.

We disagree with the Rice Plaintiffs' argument that even if exigent circumstances existed to justify Arnold's entry, he should have left after Rice asked him to leave. First, the cases they cite for that proposition do not support it. *See Flippo v. West Virginia*, 528 U.S. 11, 14 (1999) (concluding that police officers can enter without a warrant if they "reasonably believe a person is in need of immediate aid" but that that exception does not justify a general right to a warrantless search of a crime scene where there is no immediate danger); *Mincey*, 437 U.S. at 392–93 (explaining that it is not enough that a murder occurred to invoke an exception to the Fourth Amendment and that police officers need "an emergency threatening life or limb" to actually search the scene). Further, the exigent circumstances that justified Arnold's entry— Rice's suicidal behavior—had not disappeared just because Rice asked them to leave; he was still intoxicated and pointing a gun to his head. We decline to second guess Arnold's decision to remain in Rice's home with the threat of suicide still present. *See Sutterfield v. City of Milwaukee*, 751 F.3d 542, 562 (7th Cir. 2014) ("To say, as Sutterfield does, that given the passage of time and her own assurances to the officers that she was fine, that there was no longer

12

any emergency, and that the officers should have heeded her demands that they leave, is to engage in the very sort of second-guessing that we [have previously] eschewed . . . . How were the officers to know that Sutterfield was competent to assess the state of her own mental health or that, regardless of what she herself said, there was no longer any risk that she might harm herself?").

Finally, the fact that Arnold's entry into Rice's home may have violated departmental policies does not deprive him of qualified immunity. Admittedly, the fact that Arnold allegedly failed to follow departmental policy makes his actions more questionable, because it is questionable whether it is objectively reasonable to violate such a departmental rule. But "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Davis v. Scherer*, 468 U.S. 183, 194 (1984). Violating a departmental regulation, on its own, is not sufficient to deprive Arnold of qualified immunity. *See Gagne v. City of Galveston*, 805 F.2d 558, 559–60 (5th Cir. 1986) (holding that police officer was entitled to qualified immunity after he placed a prisoner into a cell without removing the prisoner's belt, which violated departmental regulations, and the prisoner hung himself). Without more, the Rice Plaintiffs have not met their burden of showing that Arnold is not entitled to qualified immunity.

Thus, we hold the district court did not err in granting Arnold's motion for summary judgment on the warrantless entry claim because Arnold is entitled to qualified immunity.

### b. *Excessive Force*

To maintain a claim for excessive force, the Rice Plaintiffs must prove (1) Rice sustained an injury, (2) the injury resulted from Deputy Arnold's use of force that was excessive to the needs, and (3) the force used was objectively unreasonable. *See Ballard v. Baldwin*, 444 F.3d 391, 402 (5th Cir. 2006).

No. 13-30639

Deadly force is considered reasonable when the officer "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Thus, "[a]n officer's use of deadly force is not excessive, and . . . no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others." *Rockwell*, 664 F.3d at 991 (citation and internal quotation marks omitted).

The Rice Plaintiffs make three arguments to explain how the district court erred in granting summary judgment on their excessive force claim. First, they argue that there is a genuine dispute of material fact regarding whether Rice actually had a gun in his hand at the time Arnold shot him. They point to two specific facts: (1) they say that the officers both claimed that Rice held the gun in his right hand but that Rice's family claimed he always held his gun with his left hand; and (2) they also argue that Arnold said he shot Rice because Rice was entering the kitchen with a gun but that the location of Rice's body after the shooting shows he was actually shot in the garage not in his home. Second, they argue that even if Rice had a gun, Arnold is not entitled to qualified immunity under circuit precedent. Finally, they claim the district court erred in failing to admit evidence of Arnold's "lack of impulse control," specifically the page allegedly showing Arnold's MySpace page with the image of Clint Eastwood.

We disagree with each of these arguments and hold Arnold is entitled to qualified immunity from the Rice Plaintiff's excessive force claim. First, any dispute about whether Rice had a gun in his hand at the time he was shot is not genuine. Arnold's interaction with Rice was audio-recorded, and the transcript of the recording shows that in the ten seconds before Arnold fired at Rice, Arnold can be heard shouting at Rice to "put the gun down" at least three times and warning him not to "come in here." While the conflicting evidence

14

about what hand Rice held his gun in is potentially circumstantial evidence that Rice did not actually have a gun in his hand when he was shot, the audio recording of Arnold shouting at Rice to put his gun down seconds before he shot Rice is evidence such that a reasonable jury could not return a verdict for the Rice Plaintiffs. *See Anderson*, 477 U.S. at 248. The Rice Plaintiffs have not questioned or otherwise undermined the authenticity of the recording or argued that Arnold was lying about Rice having a gun when he was heard telling Rice to put the gun down on the recording. Thus, any dispute about whether Rice had a gun could only be resolved in Arnold's favor.

With that factual dispute resolved, we hold that Arnold did not violate Rice's right to be free of excessive force. *See, e.g.*, *Harris v. Serpas*, 745 F.3d 767, 770, 772–73 (5th Cir. 2014) (holding that police officers had not violated Harris's right to be free from the use of excessive force when, after responding to a 911 call saying that Harris was suicidal, officers shot Harris when he stood up out of bed with a knife raised over his shoulder in a stabbing position and refused to drop the knife); *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012) (police officer had not used excessive force when Elizondo "ignored repeated instructions to put down the knife he was holding," and at the time the officer fired, Elizondo "was hostile, armed with a knife, in close proximity to [the officer], and moving closer"); *Ramirez v. Knoulton*, 542 F.3d 124, 127, 131 (5th Cir. 2008) (concluding that a police officer had not violated the plaintiff's constitutional rights after firing at Ramirez where the officer stopped Ramirez in a traffic stop, knew Ramirez was armed, Ramirez exited the car, refused to drop his weapon, and put his hands together while standing near the officer).

We encountered a similar situation in *Rockwell*, when we considered whether police officers had violated the right to be free from excessive force. There too officers killed a suicidal young man, Rockwell, they were called to aid. *Rockwell*, 664 F.3d at 990. Officers responded to a 911 call reporting that

Rockwell had become a danger to himself and others; that he was bi-polar and schizophrenic; off his medication; and that he had locked himself in his bedroom. *Id.* at 988. When officers entered Rockwell's room holding pepperball guns, Rockwell rushed toward the officers holding two serrated knives. *Id.* at 989. Three of the six officers fired shots at Rockwell, and he eventually died from his wounds. *Id.* at 990. We held that the officers' use of deadly force was objectively reasonable and that Rockwell's "Fourth Amendment right to be free from the use of excessive force was not violated." *Id.* at 993. The facts are analogous here—Rice was suicidal, Rice had been drinking heavily, the officers had responded to a 911 call because of Rice's behavior, the officers knew Rice mistrusted police officers, Rice was armed, and Rice was moving towards the officers—and support our holding that Arnold did not violate Rice's constitutional rights.

Further, any dispute about whether Rice was in the kitchen or the garage at the time he was shot is not material. It is undisputed that, at the time Rice was shot, he had exited his truck, was walking toward the door into his house, and as discussed above, had a gun in his hand. The material fact here is that Rice was armed and moving toward the officers. Thus, a potential discrepancy in Rice's precise physical location at the time he was shot is inapposite, given that he was undisputedly approaching the officers with a loaded weapon which he had recently fired and which he refused to surrender.

Our conclusion would not change even if the district court had not struck paragraphs 27 and 29 of the complaint and had considered the MySpace page. Though the Rice Plaintiffs are not entirely clear how they would have asked the district court to consider this evidence, they appear to argue that the evidence shows Arnold was prone to bursts of anger and violence, so he is not entitled to qualified immunity. But the Supreme Court has been clear that the "question is whether the officers' actions are 'objectively reasonable' in light of

the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. Arnold's subjective beliefs are irrelevant here. Taking an objective view of the facts in this case, we hold that Arnold is entitled to qualified immunity because he did not violate Rice's constitutional right to be free from excessive force.

### 2. State Law Claims against Arnold

#### a. *Assault and Battery*

Under Louisiana law, a battery is a "harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact." *Caudle v. Betts*, 512 So. 2d 389, 391 (La. 1987). Battery does not require the intent to inflict damage: "[i]t is sufficient if the actor intends to inflict either a harmful or offensive contact without the other's consent." *Id.* at 391 (citations omitted). "[A]ssault is the imminent threat of a battery." *Bulot v. Intracoastal Tubular Servs., Inc.*, 98-2105, p. 13 (La. App. 4 Cir. 2/24/99); 730 So. 2d 1012, 1018, *abrogated on other grounds by Bulot v. Intracoastal Tubular Servs., Inc.*, 2004-1376 (La App. 4 Cir. 11/3/04); 888 So. 2d 1017. "Under ordinary circumstances the use of reasonable force to restrain an arrestee shields a police officer from liability for battery." *Ross v. Sheriff of Lafourche Parish*, 479 So. 2d 506, 511 (La. App. 1 Cir. 1985). But, "[e]xcessive force transforms ordinarily protected force into an actionable battery." *Penn v. St. Tammany Parish Sheriff's Office*, 2002-0893, p. 7 (La App. 1 Cir. 4/2/03); 843 So. 2d 1157, 1161.

The Rice Plaintiffs only make cursory reference to their assault and battery claims on appeal, alleging that the district court's decision is "unsupported by the facts and contrary to law" and that the district court "construe[d] the established fact[s] and inferences in Arnold's favor and against [the Rice Plaintiffs]." The only specific argument they make is that

Arnold was not entitled to use reasonable force against Rice because he was not placing Rice under arrest.

We disagree. "Police officers owe a duty of reasonableness when effecting an arrest or approaching a subject to disarm him." *Manis v. Zemlik*, 11-799, p. 7 (La. App. 5 Cir. 5/8/12); 96 So. 3d 509, 513. Here, Arnold was trying to disarm Rice; he asked Rice repeatedly to put down his weapon. The question then becomes whether Arnold acted reasonably. Louisiana courts use a number of factors to evaluate the reasonableness of the officer's actions:

> the known character of the arrestee; the risks and dangers faced by the officer; the nature of the offense or behavior involved; the chance of escape if the particular means are not employed; the existence of alternative methods of arrest or subduing the arrestee; the physical strength, size and weaponry of the officers as compared to that of the arrestee; and the exigencies of the moment.

*See Penn*, 2002-0893 at p. 7; 843 So. 2d at 1161 (citing *Kyle v. City of New Orleans*, 353 So. 2d 969, 973 (La. 1977)). Applying those factors here, Arnold acted reasonably. Arnold knew that Rice was suicidal and intoxicated, and he knew that Rice was armed. Arnold had tried other means to subdue Rice, repeatedly asking him not to harm himself and to put his weapon down and come into the house. And in the moments right before he was shot, Rice was approaching Arnold with a loaded weapon.

Thus, we hold the district court did not err in granting summary judgment for Arnold on the assault and battery claims.

### b. False Imprisonment

False imprisonment is the "unlawful and total restraint of the liberty of the person." *Crossett v. Campbell*, 122 La. 659, 664; 48 So. 141, 143 (La. 1908). To prove their claim for false imprisonment, the Rice Plaintiffs must prove that (1) Rice was detained and (2) his detention was unlawful. *See Kennedy v. Sheriff of East Baton Rouge*, 2005-1418, p. 32 (La. 7/10/06); 935 So. 2d 669, 690.

No. 13-30639

The Rice Plaintiffs argue that Rice was totally imprisoned because Arnold kept Rice in the garage by use of force. They also claim that there is no legal excuse for Arnold's false imprisonment because Rice had not committed a crime.

Despite these arguments, Rice was not detained. Our review of the record shows that the officers were not trying to prohibit Rice from entering the house completely and that Rice was not totally restrained. Instead, the officers only told Rice not to enter the home with his gun. *See Smith v. Knight*, 39,781, p. 6 (La. App. 2 Cir. 6/29/05); 907 So. 2d 831, 835 ("Submission to the mere verbal directions of the employer, unaccompanied by force or threats, does not constitute false imprisonment."). So, the Rice Plaintiffs have failed to prove the first element of false imprisonment.

Moreover, even assuming that Rice was detained, the Rice Plaintiffs have failed to prove that any detention was unlawful. Arnold could reasonably have believed that Rice had committed an offense by firing his gun in the garage. *See, e.g.*, La. Rev. Stat. Ann. § 14:94 ("Illegal use of weapons or dangerous instrumentalities is the intentional or criminally negligent discharging of any firearm . . . where it is foreseeable that it may result in death or great bodily harm to a human being."); La. Rev. Stat. Ann. § 14:37.2 ("Aggravated assault upon a peace officer with a firearm is an assault committed upon a peace officer who is acting in the course and scope of his duties with a firearm."). Committing either of these crimes would have been sufficient to subject Rice to lawful arrest and detention.

Thus, we affirm the district court's grant of summary judgment for Arnold on the false imprisonment claim.

### c. *Intentional Infliction of Emotional Distress*

A claim for intentional infliction of emotional distress requires the plaintiff to prove three things: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the

plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto*, 585 So. 2d 1205, 1209 (La. 1991). In support of their claim for intentional infliction of emotional distress, the Rice Plaintiffs point to the image that they allege is from Arnold's MySpace page. They also argue more generally that the district court failed to construe the evidence in their favor, as the court was required to do on summary judgment.

We agree with the district court that summary judgment was appropriate for Arnold on the intentional infliction of emotional distress claim. To support a finding of intentional infliction of emotional distress, Louisiana law requires that "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *White*, 585 So. 2d at 1209. While the facts in this case are tragic, the Rice Plaintiffs have not alleged anything suggesting Arnold's actions "go beyond all possible bounds of decency" or that his behavior is "intolerable in a civilized community."

The Rice Plaintiffs also have not presented any facts showing that Arnold intended to cause severe emotional distress. The only evidence the Rice Plaintiffs cite to support this claim is the MySpace printout, but that does not change our decision. As the district court noted, there is nothing on the MySpace printout in the record to link it to Arnold. This makes it impossible for us to conclude that the MySpace page shows Arnold intended to inflict severe emotional distress on the Rice Plaintiffs. And even if there were evidence linking the printout to Arnold, that image of a movie character still does not show that Arnold specifically intended to cause the Rice Plaintiffs any distress.

Thus, we hold the district court correctly granted Arnold's motion for summary judgment on this claim.

## B.  The Rice Plaintiffs' Claims against Graves

The Rice Plaintiffs devote only one paragraph of their brief to their claims against Graves.  Essentially they argue that, because the district court erred in finding Arnold was not liable, the district also erred in finding that Graves was not liable.  Graves argues the inverse: because Arnold was not found liable for any of the state law claims and Arnold was entitled to qualified immunity, Graves cannot be held liable.

We hold the district court correctly granted Graves's motion for summary judgment.  The Rice Plaintiffs offer only one argument for reversing the district court: because we should reverse the district court on the claims against Arnold, we should also reverse and remand the claims against Graves.  But, we have already held that the district court was correct in granting summary judgment for Arnold on all of the federal and state claims asserted against him.  And as the Rice Plaintiffs' argument on appeal demonstrates, their only theory for Graves's liability rests on the impropriety of Arnold's actions.  Thus, because we affirm the district court's decision with respect to the claims against Arnold, we also affirm the district court's decision with respect to the claims against Graves.

## C.  The Rice Plaintiffs' Claims against ReliaStar

Finally, the Rice Plaintiffs argue that the district court erred when it granted summary judgment for ReliaStar on the Rice Plaintiffs' claim that ReliaStar improperly denied them accidental death benefits.  This Court has previously held that whether a death is accidental for purposes of an accidental death benefit policy is a question of fact.  *Todd*, 47 F.3d at 1456.  The fact question has both an objective and a subjective component.  We consider

whether (1) the decedent had a subjective expectation of survival and (2) if so, was the expectation objectively reasonable. *Id.* at 1456.

The Rice Plaintiffs claim the district court's decision was wrong for several reasons.  First, they argue that under ERISA, there is a federal common law presumption in favor of accidental death.  Second, they argue that because ReliaStar both pays death benefits and evaluates claims for those benefits, there was an inherent conflict of interest that the district court failed to consider.  Finally, the Rice Plaintiffs argue that the district court improperly deferred to ReliaStar's factual determinations; the district court should only have deferred to ReliaStar's factual determinations if they reflected a "reasonable and impartial judgment," and here, they did not.  Essentially, they argue the evidence does not support ReliaStar's determination that Rice's death was not accidental.

We need not decide whether there is a federal common law presumption in favor of accidental death, because even if there were, we would affirm the district court's grant of summary judgment for ReliaStar.  Assuming *arguendo* that the presumption the Rice Plaintiffs allege exists, based on the facts in this case, ReliaStar did not abuse its discretion in determining that Rice's death was not accidental.  ReliaStar relied on an administrative record that supported finding Rice's death was not accidental.  Rice was suicidal and had been drinking heavily on the day he was shot.  Rice took eleven prescription pills while drinking, and he told the bartender at the bar where he had been drinking that he left his pills behind because "it's over."  Rice was also heard revving the engine in his truck while the garage was closed, suggesting he may have been trying to kill himself through carbon monoxide poisoning.  Further, Rice approached police officers with a loaded weapon even after the officers told him to put his gun down; he told the officers "I want to commit suicide";

and after Rice's death, the sheriff's investigation committee found a note Rice left his sister that appeared to be a suicide note.

The Rice Plaintiffs do not dispute the accuracy of these facts. Instead, they point to facts that, they claim, show Rice's expectation of survival was objectively reasonable: he did not ask the officers to come to his home, and he asked the police officers to leave. But even taking these facts into consideration, ReliaStar did not abuse its discretion in finding that either Rice did not have a subjective expectation of survival or that, if he had that expectation, it was not objectively reasonable. *See, e.g., Holland v. Int'l Paper Co. Retirement Plan*, 576 F.3d 240, 247 (5th Cir. 2009) ("Our review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness—even if on the low end." (citation and internal quotation marks omitted)). Thus, ReliaStar did not abuse its discretion in finding that Rice's death was not accidental, that is, not an "unexpected, external, violent and sudden event."

Moreover, while the Rice Plaintiffs correctly point out the structural conflict of interest issue, that is just one factor courts consider in evaluating ReliaStar's decision to deny benefits. As this Court explained in *Holland*,

> In addressing how such a conflict must be accounted for under an abuse of discretion review, the Supreme Court in [*Metropolitan Life Insurance Co. v.*] *Glenn*[, 544 U.S. 105, 128 S.Ct. 2342 (2008)] eschewed "special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict." 128 S.Ct. at 2351. In particular, the Court held that weighing a conflict as a factor in the abuse of discretion analysis does not "impl[y] a change in the standard of review, say, from deferential to de novo review." *Id.* at 2350. Quite simply, "conflicts are but one factor among many that a reviewing judge must take into account." *Id.* at 2351.

576 F.3d at 247–48.  As discussed above, the administrative record was replete with factual evidence that ReliaStar relied on in determining that Rice's death was not accidental, demonstrating that ReliaStar could have reached its determination without resorting to the conflict of interest.

Thus, we hold the district court did not err in granting summary judgment for ReliaStar.

## V.  CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the district court.