# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 18-30362

————

United States Court of Appeals
Fifth Circuit

**FILED**

July 17, 2019

Lyle W. Cayce
Clerk

BRENDA MASON, Individually & on behalf of Quamaine Dwayne Mason;
BILLY C. MASON, Individually & on behalf of Quamaine Dwayne Mason,

Plaintiffs - Appellants

v.

MARTIN FAUL, Individually & in His Official Capacity,

Defendant - Appellee

————

Appeal from the United States District Court
for the Western District of Louisiana

————

Before JONES, HO, and OLDHAM, Circuit Judges.

PER CURIAM:

This case arrives before us for the second time, as the panel in a previous appeal denied qualified immunity to Officer Faul, who tragically shot to death Quamaine Mason under circumstances that were the subject of numerous and conflicting witness statements and expert opinions. The shooting was precipitated by a 911 call to the Lafayette, Louisiana police about a possible armed robbery. Faul arrived at the scene with his canine and saw two other officers with weapons drawn on Mason and his former girlfriend. Faul was within three to six feet of the suspect. Alarmed by what he thought were Mason's sudden movements toward a gun in his waistband, Faul released the dog and began to fire. As the dog attacked him, Mason was hit five times in

No. 18-30362

his side and front, then after a brief pause where he had fallen face down, an additional two times. This court carefully reviewed the evidence on summary judgment, vacated the defense judgment on Faul's first five shots, and found material fact issues concerning the availability of qualified immunity for Faul's final two shots. *See Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 277–78 (5th Cir. 2015) ("Mason I"). The panel held that the district court had failed to credit evidence favorable to the plaintiffs when assessing the officer's conduct and that the disputed, material question for the final two shots, according to the panel, was whether Mason was "clearly incapacitated" by the earlier shots by the time he lay on his stomach. *Id.*

On remand, the case was tried before a jury for several days, at the conclusion of which the jury determined that Officer Faul had used unconstitutionally excessive force against Mason but was nevertheless entitled to qualified immunity. From that verdict, and judgment accordingly, Mason's family appeals. Appellants raise four issues. We discuss each briefly, noting that Appellants pointedly do not contend that the verdict was not supported by sufficient evidence or was against the great weight and preponderance of the evidence.

**A. Whether the Trial Court erred in relying on *Young v. City of Killeen*, 775 F.2d 1349 (5th Cir. 1985).**

Appellants argue the trial court referenced this case improperly for several purposes: to analyze the qualified immunity defense; to exclude portions of their expert testimony; and to justify jury instructions. The question of jury instructions will be treated in the next section. In *Young*, this court explained what has been consistently reinforced as the basis for law enforcement officers' qualified immunity defense. Such immunity may be sustained even when officers act negligently, or when they could have used another method to subdue a suspect, or when they created the dangerous

2

confrontation, or when the law governing their behavior in particular circumstances is unclear. *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S. Ct. 3034, 3039–40 (1987) (qualified immunity protects reasonable, if mistaken, judgments by law enforcement); *Mullenix v. Luna*, 136 S. Ct. 305, 310 (2015) (officers are entitled to qualified immunity even where they could have used "alternative means" to subdue the suspect); *Rockwell v. Brown*, 664 F.3d 985, 992–93 (5th Cir. 2011) ("well established" that the qualified immunity analysis in the excessive force context is "'confined to whether the [officer or another person] was in danger *at the moment of the threat* that resulted in the [officer's use of deadly force].'") (citing *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 493 (5th Cir. 2001)); *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (to overcome qualified immunity, there must be "clearly established law" that is "particularized to the facts of the case.") (citations omitted).  That is because courts should not hold officers liable from the safety of our "20/20 vision of hindsight" for decisions taken in a split-second under potentially life-threatening conditions. *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872 (1989).

Thus, although the parties might better have relied in their briefs on Supreme Court precedent from the ensuing three decades following *Young*, the trial court's reliance on that case as a general matter was not misplaced. Contrary to the views expressed by Judge Higginbotham's dissent in *Mason I*, 806 F.3d at 286-88, and adopted here by Appellants, *Young*'s holding expresses the law regarding qualified immunity just as accurately for this case, involving both the officer's release of a trained canine and a shooting, as it did for a police encounter involving the shooting alone.  It was for the jury to determine, as Judge Higginbotham's dissent acknowledged, *Id.* at 288, whether Mason's actions at any point could have led a reasonable officer to believe that Mason was posing a serious threat to others.  Qualified immunity is justified unless

*no* reasonable officer could have acted as Officer Faul did here, or *every* reasonable officer faced with the same facts would *not* have shot at Mason. *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) ("The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply") (citing *Reichle v. Howards*, 566 U.S. 658, 666, 132 S. Ct. 2088 (2012)).

Exactly what portion of *Young* was erroneously relied on by the trial court for evidentiary purposes is unclear from Appellants' brief, but as noted, that case correctly concluded that officer negligence is not a basis to deny qualified immunity. Further, expert testimony concerning police procedure violations by a defendant officer are not relevant to the circumstances that confronted the officer at the moment he used deadly force. We have reviewed the record pertaining to the court's exclusions of proffered expert evidence and do not find those rulings that were based on *Young* in error under the circumstances of this case. In particular, the court permitted the expert to testify about proper dog handling procedures, and whether Faul's actions were consistent with those procedures, but not to what Faul could or should have done prior to his encounter with Mason.

## B.  Jury Instruction and Verdict Errors

Appellants contend that the trial court erred by submitting to the jury two jury interrogatories, one on unconstitutional excessive force and one on qualified immunity. They contend that this alleged error, fortified by the court's misplaced reliance on *Young*, led to an inconsistent jury verdict on the issues. There is no error. The court's charges on the constitutional issue and qualified immunity separated the two questions and were precisely and almost verbatim stated according to the Fifth Circuit Pattern Jury Instructions (Civil) 10.1 and 10.3. The pattern instructions, in turn, represent an admirable summary, based on Supreme Court and Fifth Circuit precedent, of the

elements of a plaintiff's claim that must be proven at trial.  We find no error in the court's use of the pattern charges.  *See United States v. Andaverde-Tinoco*, 741 F.3d 509, 516 (5th Cir. 2013) (alleged jury-charge error was not "clear or obvious" when it was "almost identical to the charge found in the . . . Pattern Jury Instructions"); *see also Harrison v. Otis Elevator Co.*, 935 F.2d 714, 717 (5th Cir. 1991) ("No harmful error is committed if the charge viewed as a whole correctly instructs the jury on the law, even though a portion is technically imperfect.") (citing *Sandidge v. Salen Offshore Drilling Co.*, 764 F.2d 252, 261–62 (5th Cir.1985)).

The court also did not err in rejecting a plaintiff-proffered charge founded on the Second Amendment, because no question was litigated about Mason's legal carrying of a firearm.  Plaintiffs' evidence that Mason could legally carry a pistol went unaddressed by the defense, because although the defense performed a records search and found no concealed weapons permit, the defense was not confident enough in their search efforts to establish that Mason absolutely did not have a permit.  For this reason, the court resolved the factual dispute in favor of Mason to the extent it was disputed.  In any event, the case cited by Appellants for the Second Amendment argument is unpublished and therefore non-precedential in this court.  *See Graves v. Zachary*, 277 F. App'x 344 (5th Cir. 2008) (unpublished); *see* Fifth Circuit Rule 47.5.4 ("[u]npublished opinions issued on or after January 1, 1996, are not precedent, except under the doctrine of res judicata, collateral estoppel or law of the case . . . ."timely).  Further, *Graves* arose from a summary judgment appeal, which bears little usefulness for instructions at a trial on the merits, and the court there made clear that it "express[ed] no view on the ultimate merits of the claim." *Graves*, 277 F. App'x at 350.

## C. Inconsistent Jury Verdicts

Because the jury found that Officer Faul used "objectively unreasonable" excessive force (Issue One) but was also entitled to qualified immunity (Issue Two), Appellants contend the verdict is fatally inconsistent. We disagree. That these two issues were framed according to governing law and the pattern jury instructions has already been pointed out. It is therefore inherently difficult to credit an argument of legal inconsistency, much less redundancy. To be sure, an officer's conduct must be objectively unreasonable to find a Fourth Amendment violation. *Graham,* 490 U.S. at 397, 109 S. Ct. at 1865. And qualified immunity must be rejected where the facts found by the jury demonstrate not only a constitutional violation but also that the law was clearly established such that the officer's conduct was objectively unreasonable according to that law. *Anderson,* 483 U.S. at 641, 107 S. Ct. at 3039–40. It was not clearly established at the time of this shooting that an officer armed with a pistol and a trained canine could not release the canine on a suspect and nearly simultaneously begin to shoot to incapacitate Mason, unless *no* reasonable officer could have believed that Mason continued to pose a danger.

The term "objective reasonableness" pertains independently to the determination of a constitutional violation and also to the immunity issue. *Saucier v. Katz,* 533 U.S. 194, 205, 121 S. Ct. 2151, 2158 ("The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct). While Officer Faul, according to the jury, used objectively unreasonable excessive force in deploying the canine and shooting Mason, this is not fatally inconsistent with a factual finding of immunity. The jury must have found that although Officer Faul's belief that Mason posed and continued to pose a serious threat was incorrect, it was excusable or, at most, negligent in the heat and immediacy of the confrontation. Put otherwise, for immunity purposes, the jury need not

have accepted the contention, advanced in Judge Higginbotham's dissent, that Mason posed no "sufficient threat" before or during the confrontation.[1]  In that situation, qualified immunity was required.  It is this court's duty to resolve any facial conflict in a jury's verdict.  *Gallick v. Baltimore and Ohio Railroad Co.*, 327 U.S. 108, 119, 83 S. Ct. 659, 666 (1963) ("it is the duty of the courts to attempt to harmonize the answers . . . to reconcile the jury's findings, by exegesis, if necessary . . before we are free to disregard the jury's verdict and remand the case for a new trial.").  Here, given the numerous witnesses and conflicting versions of the encounter, we cannot conclude that the facts found by the jury could not support both of its findings.

**D.  Whether the case for qualified immunity "fails."**

Appellants' final contention is that as a matter of law Officer Faul could not sustain a qualified immunity defense.  To support this proposition, which seems inconsistent with their preliminary assertion that they do not challenge sufficiency of the evidence, they provide a rendition of trial evidence much of which was contradicted or questioned by other testimony.  This multi-day trial, after all, evoked a great deal more evidence, or evidence more compellingly presented, than was available at the summary judgment stage.  The jury were entitled to judge witness credibility in a way not permitted on the earlier appeal.  In brief, the hotly disputed evidence centered on how violently Mason had acted when he went to his former girlfriend's apartment; how threatened the other witnesses present in the apartment felt by Mason's behavior; whether, as three officers and Babino (in an early statement to police) said, he reached for his waistband where the pistol was hitched; and whether he

---

[1] If this kind of quick dismissal of qualified immunity, based solely on the general test set forth in *Tennessee v. Garner*, 471 U.S. 1, 105 S. Ct. 1694 (1985), was ever good law, it is clearly no longer good law in light of *Mullenix*, which called such over-reliance on *Garner* a "mistake."  *Mullenix*, 136 S. Ct. at 305.

continued to move his arm after falling to the ground.  Appellants point to alleged contradictions in Faul's statements and testimony, but the jury no doubt assessed these along with the rest of the evidence.  Following a properly conducted trial, this court is required to sustain the jury's verdict on the fact issues.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is **AFFIRMED.**