# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 20, 2024

Lyle W. Cayce
Clerk

No. 22-10483

Eric Cruz,

*Plaintiff—Appellant*,

*versus*

Officer Domingo Cervantez,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:16-CV-4

Before Stewart, Dennis, and Wilson, *Circuit Judges*.
Cory T. Wilson, *Circuit Judge*:

This appeal concerns an evidentiary ruling during trial and its effect on the jury's verdict for Officer Domingo Cervantez as to the deliberate indifference claims brought against him by Eric Cruz pursuant to 42 U.S.C. § 1983.  Cruz alleged violations of his constitutional rights arising out of Cervantez's failure to protect Cruz from his cellmate while he was a pretrial detainee at the Lubbock County Detention Center (LCDC).  At trial, the jury agreed that Cervantez violated Cruz's constitutional rights by showing deliberate indifference but decided that Cervantez was nonetheless entitled to qualified immunity because he did not act unlawfully, "in light of clearly

1

established law and the information [he] possessed." Cruz, now *pro se*, contends that the district court abused its discretion in excluding evidence of disciplinary action taken against Cervantez following the underlying incidents. Because Cruz fails to show that any error affected his substantial rights, we affirm.

## I.

## A.

According to the evidence adduced at trial, on June 13, 2015, there were two incidents between Cruz and his cellmate Spencer Terry in their cell, number 219: one in the late morning or around noon, and one just after 2:00 p.m.[1] Cell 219 was on the second floor of the cell block and to the right of Cervantez's officer station, which was on the first floor situated in the center of the cell block.

Cruz testified that the first incident was "pretty quick" but that Terry caused injuries to Cruz's head and neck and that Cruz "had some noticeable marks across [his] face . . . ." Several inmates gathered around Cruz and Terry's cell door to watch the altercation.

Cruz testified that afterwards, Cervantez called Cruz to his desk to inquire about Cruz's injuries, and Cruz, fearing for his safety, asked Cervantez to move him to a different cell. Cruz testified that Cervantez told him to wait until the shift change later that day. Testimony at trial, as well as video footage of the noon altercation, suggested that there was enough commotion in and around the cell that a reasonable officer would have taken a closer look. However, there was conflicting evidence about precisely what

_____

[1] Cervantez testified that the first incident "was just a little disagreement" at 10:00 a.m. Cruz testified that the first incident occurred at about noon. Video footage and a report by Sergeant Brenda Hassell indicate that the first incident occurred just after noon.

Cervantez could see as events unfolded, as Cervantez testified that the stairwell in the cellblock obscured his vision into Cell 219.

Cervantez characterized the first incident as a "quick little argument," after which he questioned Cruz and Terry about whether Cervantez needed to know anything. When they both responded "no," Cervantez considered the disagreement "squashed." Cervantez insisted that he was only aware of a "verbal argument" between the inmates at this time, that Cruz told him everything was fine with his cellmate, and that Cruz did not ask to move to a different cell. Cervantez stated that he saw no marks on Terry or Cruz and nothing out of the ordinary during his jail security check a few minutes after the first incident.

At about 1:30 p.m., Sergeant Brenda Hassell, Cervantez's supervisor, relieved Cervantez for his lunch break, at which time Cervantez did not report any problems to her. Cervantez returned from lunch around 2:00 p.m. and later performed a jail security check, during which he apparently did not look into Cruz and Terry's cell or note any disturbance.

Cruz testified that around the time Cervantez performed the security check, as Cruz was packing his belongings in preparation for a move, Terry attacked him by throwing hot water at him, cutting him with a "homemade shank," and beating him. During that altercation, which lasted about fifteen minutes, Cervantez told the inmates through an intercom to stop "horseplaying," but he never went to the cell. Cervantez testified that though the inmates occasionally were loud, he never knew there was a "fight." He could not recall if he used the intercom once or twice. Cervantez testified he did not go to Cell 219 at the time because he was watching other inmates cleaning the dayroom and did not want to turn his attention away from them while they had cleaning supplies that could be used as weapons. Surveillance footage shows inmates cleaning within the cell block at the time.

Cervantez eventually called another officer, Corporal Charles Hoffman, to break up the fight between Cruz and Terry. Cruz was sent to receive medical treatment for his injuries, which included cuts to his neck, head, and body. Terry sustained a cut lip. Hassell later noticed large amounts of blood in Cruz and Terry's cell. She asked Cervantez if anything had happened between Cruz and Terry earlier in the day, and Cervantez responded that "there was nothing out of the ordinary and nothing he could think of."

The LCDC initiated a disciplinary investigation into the inmates' altercations, finding Cruz to have engaged in fighting. Cruz revealed that he had been attacked by Terry. However, Cruz admitted that he did not tell Cervantez that he and Terry had gotten into a fight during the noon altercation.

The Lubbock County's Sheriff's Office (LCSO) also initiated an investigation into Cervantez's actions. The LCSO investigation culminated in a disciplinary sanction (the Disciplinary Notice) that concluded that Cervantez's conduct constituted both "unsatisfactory performance" in violation of § 100.37 of the LCSO's General Orders and "dereliction of duty" in violation of § 100.21 of the LCDC Policies and Procedures.

The Disciplinary Notice includes the following "Synopsis of Incident and Violations":

> On 6/13/2015 Officer Cervantez was assigned to work as the Pod Officer in 1D. At approximately 1210 Officer Cervantez heard a disturbance in Cell 219 and observed several inmates gathering at the door of the cell peering inside. As Officer Cervantez watched, five inmates gathered at the door of Cell 219 and were looking intently into the cell. Officer Cervantez used the intercom cell page to tell the inmates in Cell 219 to calm down. Officer Cervantez did not go to the cell to see what was happening. Officer Cervantez opened the cell door by

No. 22-10483

utilizing the touch screen at his officer station to allow the inmates to exit the cell.

At approximately 1450 the same two inmates were again in Cell 219. Officer Cervantez heard a commotion coming from the cell. Officer Cervantez again failed to go to the cell to investigate the disturbance. Officer Cervantez used the intercom cell page to tell the inmates to settle down. When the inmates refused to comply, Officer Cervantez still did not go to the cell to investigate. Instead, he stayed at the officer station and called another officer who was not in the pod to come in and look into the situation.

The "Supervisor Comments"[2] in the Disciplinary Notice conclude that:

Officer Cervantez failed to take appropriate action to investigate a disturbance between two inmates. Officer Cervantez observed and heard things which should have caused him to believe there was a reasonable chance the inmates were involved in or could potentially be involved in a physical altercation. By not taking action Officer Cervantez contributed to a situation where physical harm came to both inmates.

## B.

In January 2016, Cruz filed this action against Cervantez and LCDC, asserting various § 1983 claims. In January 2017, the district court dismissed Cruz's claims against LCDC. The court did not dismiss Cruz's claim against Cervantez for failing to protect him from harm, concluding that claim survived preliminary screening, and instead ordered Cervantez to be served and answer the complaint. The district court later granted summary

---

[2] The Disciplinary Notice notes that Hassell and a Lieutenant Flud were Cervantez's supervisors. The record is unclear, however, on who wrote the Disciplinary Notice, and it does not appear Hassell signed the Disciplinary Notice.

judgment in favor of Cervantez. *Cruz v. Cervantez*, No. 5:16-CV-004, 2018 WL 10151949 (N.D. Tex. Jan. 30, 2018). This court reversed and remanded, finding that the video surveillance and Cruz's averments that he told Cervantez he feared Terry and requested to move cells "create[d] a fact issue as to whether Cervantez knew that Cruz's cellmate posed an excessive risk of harm to Cruz and disregarded that risk." *Cruz v. Cervantez*, 784 F. App'x 888, 890 (5th Cir. 2019). On remand, the district court appointed counsel for Cruz, and the case proceeded to trial in May 2022.

Before trial, Cervantez filed a motion in limine to exclude "[a]ny comments, testimony, or evidence that [Cervantez] was disciplined for anything related to [the incidents] involving [Cruz] or that he violated policies of the [LCSO] or the [LCDC] . . . ." In his motion in limine, Cervantez argued that the Disciplinary Notice related to "*negligent* conduct of [Cervantez], which might also be described as 'inept, erroneous, or ineffective,' things which the Fifth Circuit has found to be incapable of amounting to deliberate indifference." Cervantez also argued that the "disciplinary action related to *two separate incidents* that occurred in the pod, and did not relate to an investigation into whether [Cervantez] failed to protect [Cruz] . . . ." Cervantez contended that such evidence would force him to introduce evidence to counter the Disciplinary Notice even though the evidence would be of "limited relevance to a deliberate indifference issue." The court reserved decision until trial on whether to admit the Disciplinary Notice.

During direct examination of Hassell, Cruz's counsel sought to enter the Disciplinary Notice and the "determination of [Cervantez's] dereliction of duty," arguing:

> [W]e believe there's been enough testimony at this point to show that not only were the actions of Mr. Cervantez not merely negligent as they said is the reason to keep it out, but

> that the jury could find that it was deliberate indifference based on the other actions that were not taken by Mr. Cervantez on the date of the incidents in question.

The district court denied the request, stating that "[w]e're not going down that road . . . [;] the probative value is outweighed by unfair prejudice, confusing to the jury. And I just don't think we need to get into that . . . ."

Regardless, Hassell was critical of Cervantez's actions. She testified that based on her review of the video footage, Cervantez conducted a jail security check shortly after the noon altercation, but "[n]ever even look[ed] into the cell" where Cruz and Terry had just fought. Reviewing the video during her trial testimony, Hassell and Cruz's counsel had the following exchange about Cervantez's jail security check:

> [Counsel]: Officer Cervantez has testified that you could kind of turn your head and look and see what's going on in the cell.
>
> Is that how you're supposed to do a jail security check?
>
> [Hassell]: No.
>
> [Counsel]: Is that how you would train an officer to do a jail security check?
>
> [Hassell]: No.
>
> [Counsel]: How would you train an officer to do a jail security check?
>
> [Hassell]: You go and you have to look in all the cells, okay?

Hassell also offered her thoughts on the cell block environment at the time of the noon altercation. She testified that "[u]sually when other inmates gather around the cells, there's something going on or they're changing commissary or something":

> [Counsel]: . . . . So something is up when all the inmates are gathered around a cell. Is that fair?

[Hassell]: Yes.

[Counsel]: Okay. If you're a pod officer and you see all the inmates gathered around a cell, what do you do?

[Hassell]: Tell them to get away from there.

[Counsel]: And if they keep going back multiple times, what do you do?

[Hassell]: Go and check.

Though she could not specifically tell what was occurring in Cell 219 based on the video footage, Hassell stated that the disturbance would lead a "reasonable officer to say, 'I need to check on [the commotion].'" Hassell testified that Cervantez again failed to look into Cruz and Terry's cell during his jail security check around the 2:00 p.m. altercation. However, there was also testimony that Hassell herself conducted a jail security check after the noon incident, but like Cervantez, noticed nothing out of the ordinary.

After both the 2:00 p.m. altercation and Cervantez's subsequent call to Hoffman, Hassell inspected Cell 219. She wrote in her report, and testified at trial, that she "informed Officer Cervantez there was too much blood in the cell for the fight . . . to have just happened[,] and some of the blood was already dry."[3] Hassell stated that Cervantez did not report any incident to her because if he had, she would have written about it in her report. She agreed that whether there "had been a disagreement, an altercation, a fight, an argument, anything like that in [Cell] 219" was "something as a supervisor [she] would expect an officer to tell [her]." And she testified that Cervantez's reports describing the incidents were poorly written because of

---

[3] Hassell's report is recorded as Defendant's Exhibit 21. At trial, however, Cruz's counsel admitted it as "Plaintiff's Exhibit 29." The record does not show a "Plaintiff's Exhibit 29," and a review of the exhibits indicates no other report from Hassell that would be comparable.

the lack of details, even though "a class in report writing" was offered in "jailer school."

Hassell opined that Cervantez did not act as a "reasonable officer," that the noon altercation should have been reported to her when she relieved Cervantez at lunch because it was "something of significance that [she] would have wanted to know," and that both incidents should have been reported to Hoffman so he would be aware of the situation and how the incidents "could affect the safety and security of both Mr. Terry and Mr. Cruz." However, Hassell conceded that she could not "tell the jury that Officer Cervantez knew that the inmates were fighting on the day of the incident," or that Cervantez "knew and disregarded a substantial risk of harm to the Plaintiff." Consistent with Hassell's caveats, Cervantez offered as defense expert former Travis County sheriff Margo Frasier, who testified that under "the totality of the circumstances, there is no way that [she] could say no reasonable officer would have acted like Officer Cervantez." Frasier concluded that Cervantez acted in a manner that a reasonable officer could have acted.

The jury returned a verdict finding Cervantez violated Cruz's "constitutional rights by being deliberately indifferent in failing to protect him from inmate Spencer Terry on June 13, 2015." But the jury nonetheless found Cervantez was entitled to qualified immunity because "a reasonable officer could have believed that [Cruz] was not in unreasonable danger . . . and that [Cervantez's] decision not to move [Cruz] was lawful in light of clearly established law and the information Defendant Cervantez possessed." The court accordingly dismissed Cruz's claims. Cruz, by now

No. 22-10483

*pro se*, timely filed various motions asserting multiple errors,[4] which the district court denied. This appeal followed.

## II.

Most of the issues Cruz raises distill to ineffective assistance of counsel claims, which merit little mention.[5] The crux of this appeal is whether the district court erred by excluding evidence of the investigation into Cervantez's actions, particularly the Disciplinary Notice, and whether any error substantially affected Cruz's rights. For the following reasons, even if the district court abused its discretion in excluding the evidence, Cruz fails to show the error substantially affected his rights because it did not materially affect the jury's verdict that Cervantez was entitled to qualified immunity.[6]

---

[4] For instance, Cruz moved for a new trial, which the district court denied. He also moved for "Requesting Courts (*sic*) Ruling," and filed a "Declaration of Inmate Filing."

[5] Cruz lodges various criticisms of his appointed counsel best summarized as disagreements between Cruz and counsel regarding the conduct of trial. But civil litigants are "accountable for the acts and omissions of their attorneys." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 397 (1993). Cruz also asserts that the district court evinced bias against him in stating that "our jury trial system in this country, it's the best system in the world," as the court thanked jurors for their service *after* the jury rendered its verdict. Because Cruz fails to explain how the statement shows bias, this issue lacks merit.

[6] Our dissenting colleague raises another issue, arguing that the district court erred by "mistakenly inject[ing] an 'objectively unreasonable' element into the clearly-established-law prong of the qualified immunity analysis" and "submitting to the jury the question of [] objective reasonableness." *Post*, at 1. But Cruz did not object to the jury instructions in the district court, and he nowhere broaches this issue on appeal. *See Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993) ("Although we liberally construe the briefs of *pro se* appellants, we also require that arguments must be briefed to be preserved." (quoting *Price v. Digital Equip. Corp.*, 846 F.2d 1026, 1028 (5th Cir. 1988)); *cf. United States v. Sineneng-Smith*, 590 U.S. —, —, 140 S. Ct. 1575, 1579 (2020) (Courts "do not, or should not, sally forth each day looking for wrongs to right." (quoting *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987)). Even if the issue were properly before us, it fails on

No. 22-10483

## A.

Cruz alleged that Cervantez violated his Fourteenth Amendment rights by acting with "deliberate indifference."[7] *See Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir. 1996) (en banc) (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)). "Deliberate indifference is an extremely high standard to meet," and a "prison official displays deliberate indifference only if he (1) knows that inmates face a substantial risk of serious bodily harm and (2) disregards that risk by failing to take reasonable measures to abate it." *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019) (internal citations and quotations omitted).

In § 1983 actions like this one, defendants may also raise the defense of qualified immunity. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). Federal courts conduct a two-part inquiry to determine whether a defendant is entitled to qualified immunity. First, the court asks whether the "alleged conduct has violated a federal right" (here, acting with deliberate indifference in violation of the Due Process Clause), and second, "whether the right in question was clearly established at the time of the alleged violation, such that the officer was on notice of the unlawfulness of

---

plain error review: The district court's qualified immunity instruction was "precisely and almost verbatim stated according to the Fifth Circuit Pattern Jury Instruction[] . . . 10.3." *Mason v. Faul*, 929 F.3d 762, 764–65 (5th Cir. 2019). Because "[t]he pattern instruction[] . . . represent[s] an admirable summary based on Supreme Court and Fifth Circuit precedent of the elements of a plaintiff's claim[,] . . . [w]e find no error in the court's use of the pattern charge[]," *id.* (collecting cases), much less any "clear or obvious" error as required on plain error review, *United States v. Andaverde-Tinoco*, 741 F.3d 509, 516 (5th Cir. 2013).

[7] As a pretrial detainee at the time of the incidents, Cruz's constitutional claims arise under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment. *See Hare v. City of Corinth*, 74 F.3d 633, 639–43 (5th Cir. 1996) (en banc).

11

his [] conduct." *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019) (en banc) (internal quotation marks and citation omitted).

As for the second prong, "qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation marks and citation omitted). For a right to be clearly established it must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Est. of Bonilla v. Orange County*, 982 F.3d 298, 306 (5th Cir. 2020). Though this inquiry[8] is typically a question of law for the court, and not one within the province of the jury, "in certain circumstances where there remain disputed issues of material fact relative to immunity, the jury, properly instructed, may decide the question." *Tucker v. City of Shreveport*, 998 F.3d 165, 172 (5th Cir. 2021) (internal citations and quotations omitted); *see* Fifth Circuit Pattern Jury Instruction (Civil) 10.3 (2020) (instructing that "[q]ualified immunity applies if a reasonable [officer] could have believed that [his actions] [were] lawful in light of clearly established law and the information [the officer] possessed").

Here, the jury found that Cervantez's actions met the high standard for deliberate indifference, and thus constituted a constitutional violation. This meets prong one of the qualified immunity test. But Cruz's case faltered

---

[8] We agree with JUDGE DENNIS that this court's precedent on qualified immunity at times has imprecisely discussed "objective reasonableness" as though it were a distinct consideration in analyzing the second prong of the qualified immunity analysis. *Post*, at 2; *see Parker v. LeBlanc*, 73 F.4th 400, 406 (5th Cir. 2023); *Baker v. Coburn*, 68 F.4th 240, 251 n.10 (5th Cir. 2023). It is not; "[t]hat quoted standard is a 'vestige of older caselaw that predates the Supreme Court's current test.'" *Jimerson v. Lewis*, — F.4th —, —, 2024 WL 640247, at *3–4 (5th Cir. 2024) (quoting *Parker*, 73 F.4th at 406 n.1).

on prong two, as the jury found that "a reasonable officer could have believed that [Cruz] was not in unreasonable danger." We thus focus our analysis on whether excluding the Disciplinary Notice from evidence affected the jury's verdict as to that latter finding.

## B.

"We review the . . . exclusion of evidence for abuse of discretion." *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 508 (5th Cir. 2012) (citing *Tompkins v. Cyr*, 202 F.3d 770, 779 (5th Cir. 2000)). However, "[e]rroneous evidentiary rulings by the trial court constitute reversible error only when those rulings have affected a party's substantial rights." *Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 361 (5th Cir. 1995) (citing Fed. R. Evid. 103). "If the court is sure, after reviewing the *entire* record, that the error did not influence the jury or had but a very slight effect on its verdict," then a party's substantial rights have not been affected. *Id.* (emphasis added) (internal quotations and citations omitted). The party asserting error bears the burden of proving he was prejudiced by the exclusion of the evidence. *E.g.*, *Ratliff v. Aransas County*, 948 F.3d 281, 286 (5th Cir. 2020); *Moench v. Marquette Transp. Co. Gulf-Inland, LLC*, 838 F.3d 586, 594 (5th Cir. 2016).

## 1.

The district court excluded the Disciplinary Notice because: (1) its risk of "unfair prejudice" outweighed its probative value, and (2) it could have potentially confused the jury. *See* Fed. R. Evid. 403.

"Unfair prejudice" as used in Rule 403 does not encompass testimony that is merely adverse to the opposing party. Virtually all evidence is prejudicial to one party or another; otherwise, it would likely not be relevant at all. The prejudice must be "unfair" to implicate Rule 403, and that prejudice must "substantially outweigh" the evidence's probative value. *Id.*; *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 427 (5th Cir. 2006)

(quoting *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977)). The Disciplinary Notice is certainly prejudicial to Cervantez, as it is evidence that his "unsatisfactory performance" was in derogation of LCDC policies and procedures. But how it would be unfair to Cervantez is unclear, and it is likewise questionable whether any unfair prejudice *substantially* outweighs the evidence's probative value. "[F]ail[ure] to follow departmental policy makes [] actions more questionable, because it is questionable whether it is objectively unreasonable to violate such a departmental rule." *Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1133 (5th Cir. 2014). Thus, the district court likely erred in excluding the Disciplinary Notice on this ground.

It is also unclear that this evidence would have engendered such confusion as to run afoul of Rule 403. As Cervantez contends, his violations of LCSO and LCDC policies and procedures and the ultimate conclusions in the Disciplinary Notice are distinct from the qualified immunity findings the jury was required to make during trial. But any resulting confusion could have been ameliorated with limiting instructions to the jury. So again, the district court likely abused its discretion in excluding the evidence on this basis. Ultimately, though, as we next explain, the court's excluding the Disciplinary Notice does not rise to reversible error because it had little, if any, effect on the jury's finding that Cervantez was entitled to qualified immunity.

**2.**

A review of the entire record shows that "the error did not influence the jury or had but a very slight effect on its verdict," *Kelly*, 61 F.3d at 361, specifically its finding that Cervantez's "decision not to move [Cruz] was lawful in light of clearly established law and the information Defendant Cervantez possessed." Thus, Cruz's substantial rights were not affected by

the district court's exclusion of the evidence.  At a minimum, Cruz fails to meet his burden to show otherwise.

First, Cruz did not offer the Disciplinary Notice to prove prong two of the qualified immunity test.  In other words, he did not argue that it was probative of whether the law undergirding his claims was clearly established, or more specifically, whether every reasonable officer would have known that Cervantez's actions violated the law.  He offered it to substantiate Cervantez's deliberate indifference (i.e., to show prong one):  During trial, Cruz argued that the evidence showed Cervantez was "not merely negligent as [Cervantez] said is the reason to keep it out, but that the jury could find that it was deliberate indifference based on the other actions that were not taken by Mr. Cervantez . . . ."  Recall that the jury *found for Cruz* on this point, without the Disciplinary Notice in evidence.

Next, the Disciplinary Notice is materially duplicative of Hassell's trial testimony, such that admitting it would have added very little.  If anything, Hassell's testimony was more detailed than the Disciplinary Notice.  Hassell testified that inmates "at least four times" looked into Cell 219 where the fighting occurred and rather than checking the cell, Cervantez called Hoffman to do so.  Hassell described multiple ways in which Cervantez did not act as a reasonable officer, something the Disciplinary Notice never directly addresses.  And narrating the surveillance footage, Hassell agreed that there were "a lot of things going on [in the cell] that could leave a reasonable officer to say, 'I need to check on it.'"  This too went unmentioned in the Disciplinary Notice.

Hassell also testified that Cervantez's reports regarding the incidents were unsatisfactory, despite the jail offering "a class in report writing in jailer school."  She then mentioned specific deficiencies in his reports.  And, more directly to the issue of qualified immunity, Hassell agreed that "[b]ased on

everything that [she] did in [her] investigation, based on the video and based on everything" that she discussed with counsel at trial, "Officer Cervantez [did not] conduct[] himself as a reasonable officer in doing his jail security checks." The Disciplinary Notice would have added nothing of substance to Hassell's testimony, other than that LCSO concluded, applying an indeterminate standard,[9] that Cervantez violated LCSO and LCDC policies and procedures and was disciplined. *Cf. Rice*, 770 F.3d at 1133 ("[O]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision.") (quoting *Davis v. Scherer*, 468 U.S. 183, 194 (1984)); *see Beltran v. City of El Paso*, 367 F.3d 299, 308 (5th Cir. 2004) (same).

On the other side of the ledger, ample evidence supported the jury's conclusion that "a reasonable officer could have believed that [Cruz] was not in unreasonable danger," such that Cervantez's actions were "lawful in light of clearly established law and the information [he] possessed." Cruz stated during the LCDC investigation into his and Terry's conduct that he never told Cervantez about the first altercation, but he changed his story on the stand. Hassell testified that she could not determine whether Cervantez "knew and disregarded a substantial risk of harm to the Plaintiff." That is consistent with Cervantez's expert Frasier's testimony that under "the totality of the circumstances, there [was] no way that [she] could say no reasonable officer would have acted like Officer Cervantez." And the jury viewed the surveillance footage from that day, in which they could see what was occurring and how Cervantez responded. Nothing in the Disciplinary

---

[9] The Disciplinary Notice references both "sufficient competency" and the "highest standard of efficiency." While this ambiguity goes perhaps more to the bases on which the district court relied to exclude the Disciplinary Notice under Rule 403, the fact that the standard underpinning the investigation's conclusions is unclear also cabins the probative value of the evidence as to Cervantez's qualified immunity defense.

No. 22-10483

Notice counters this record, buttressing our confidence that any "error did not influence the jury or had but a very slight effect on its verdict." *Kelly*, 61 F.3d at 361. Thus, Cruz's substantial rights were not affected; at the very least, Cruz makes no showing to the contrary. *Id.*; *see Sims v. ANR Freight Sys., Inc.*, 77 F.3d 846, 849–50 (5th Cir. 1996) (declining to remand when there was "no reasonable possibility that the outcome would be different if the case were re-tried").

## III.

Even if the district court abused its discretion in excluding evidence related to Cervantez's disciplinary investigation, which culminated in the Disciplinary Notice he was issued, Cruz fails to show that any error prejudiced his substantial rights and was thus reversible. The other issues raised by Cruz in this appeal lack merit.[10] Accordingly, the district court's evidentiary ruling and its judgment dismissing Cruz's claims based on the jury's verdict are AFFIRMED.

---

[10] For the same reasons as discussed above the line, Cruz's pending motion to "take judicial notice of the fact that [the] district court once again err[ed]" is DENIED.

17

No. 22-10483

James L. Dennis, *Circuit Judge*, concurring in part and dissenting in part:

I concur in the majority opinion's rejection of much of Cruz's appeal, including its finding that the district court's evidentiary exclusion of the disciplinary notice—though in error—did not impact Cruz's substantial rights. I write separately, however, to highlight how the district court, by submitting to the jury the question of the objective reasonableness of Cervantez's behavior, mistakenly injected an "objectively unreasonable" element into the clearly-established-law prong of the qualified immunity analysis. *See Parker v. LeBlanc*, 73 F.4th 400, 406 n.1 (5th Cir. 2023) (noting that the separate "objective unreasonable" prong is a "vestige of older caselaw that predates the Supreme Court's current test . . ."); *see also Baker v. Coburn*, 68 F.4th 240, 251 n.10 (5th Cir. 2023) (refusing to add "a standalone 'objective reasonableness' element to the Supreme Court's two-pronged test for qualified immunity").

Though Cruz failed to raise this issue before the district court, the panel should nevertheless consider the "purely legal matter" of the proper qualified immunity standard since failure to do so would "result in a miscarriage of justice." *Rollins v. Home Depot USA, Inc.*, 8 F.4th 393, 397–98 (5th Cir. 2021) (quoting *Essinger v. Liberty Mut. Fire Ins. Co.*, 534 F.3d 450, 453 (5th Cir. 2008)). Failure to consider this issue would work a "miscarriage of justice" since, as explained below, Cruz in fact met his burden of rebutting Cervantez's assertion of qualified immunity and judgment should have been entered in his favor. *See id.* Moreover, Cruz—who is representing himself pro se—raises the issue of qualified immunity in his opening brief. Pro se briefing is entitled to liberal construction, and this court "is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991); *Johnson v. Quarterman*, 479 F.3d 358, 359 (5th Cir. 2007) ("Briefs by pro se

litigants are afforded liberal construction[.]") (internal citation removed). Because the panel should consider the purely legal question of the proper qualified immunity standard, I write briefly to express my concern that plaintiffs such as Cruz are being held to a higher burden than required by our caselaw to overcome a defendant's assertion of qualified immunity.

As we have recently clarified, "there is no standalone 'objective unreasonableness' element to the Supreme Court's two-pronged test for qualified immunity." *Hicks v. LeBlanc*, 81 F.4th 497, 503 n.14 (5th Cir. 2023) (internal quotation omitted). To overcome Cervantez's assertion of qualified immunity at trial, then, Cruz only had to show that: (1) Cervantez "violated a statutory or constitutional right; and (2) the right was 'clearly established' at the time of the challenged conduct."[1] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The record reflects that Cruz satisfied both prongs of the correct qualified immunity test. First, the jury found that Cervantez violated Cruz's Fourteenth Amendment rights by acting with deliberate indifference. Second, the district court announced to the jury its legal conclusion that, "[i]n this case, the clearly established law was that an inmate is entitled to protection from violence at the hands of another inmate[.]" Because Cruz satisfied both prongs of the qualified immunity test, judgment should have been entered in his favor.

---

[1] To the extent the non-binding Fifth Circuit Pattern Jury Instructions add an "objective unreasonableness" element into the clearly-established-law prong of the qualified immunity analysis, they do not accurately reflect the law. Obviously, then, *Mason v. Faul*, 929 F.3d 762, 766 (5th Cir. 2019), is inapposite because, in that case, the at-issue pattern jury instructions accurately reflected "Supreme Court and Fifth Circuit precedent." *Ante*, at 12 n.6 (panel majority wrongly suggesting that *Mason* stands for the proposition that a challenge to jury charges always fails plain-error review when the instructions are borrowed from the pattern jury instructions).

No. 22-10483

The district court's improper submission of the nonexistent question of objective reasonableness to the jury is reviewed for plain error. *Sec. & Exch. Comm'n v. Life Partners Holdings, Inc.*, 854 F.3d 765, 783 (5th Cir. 2017) ("We review unpreserved challenges in civil cases for plain error."). Under this standard, which is identical to plain-error review in the criminal context, the court "must determine (1) if there was error, (2) if that error was plain, (3) if the error affects substantial rights, and (4) whether allowing that error to stand seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Crawford v. Falcon Drilling Co., Inc.*, 131 F.3d 1120, 1124 (5th Cir. 1997). Initially, the district court's error here was plain because it is "clear" or "obvious" that juries should not be made to consider nonexistent questions of law. *See id.* at 1125 ("'Plain' is synonymous with 'clear' or, equivalently, 'obvious.'") (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)).

Further, the district court's error undoubtedly affected Cruz's substantial rights and impacts the "fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 736 ("The Court of Appeals should correct a plain forfeited error affecting substantial rights if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'") (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)). Not only did the injection of the objective reasonableness question hold Cruz to a higher standard than that required by the Supreme Court's qualified immunity test, *see al-Kidd*, 563 U.S. at 735, but it also impacted Cruz's entitlement to relief since, as explained above, Cruz otherwise overcame Cervantez's assertion of qualified immunity at trial, *see Olano*, 61 F.3d at 361.[2]

––––––––––––––––––––––––––

[2] The panel majority quips that correcting this purely legal error in an appeal brought by a pro se litigant runs afoul of the precept that we "do not, or should not, sally forth each day looking for wrongs to right." *Ante*, at 11 n.6 (quoting *United States v.*

No. 22-10483

The panel should reverse and remand to the district court with instructions to enter judgment in favor of Cruz and commence proceedings to calculate Cruz's damages. I respectfully dissent.

---

*Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020)). That quote is plucked from a case where both parties were represented by counsel and, therefore, cannot be read to relieve courts of their responsibility to take care that pro se litigants' briefs are liberally construed. *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993).